NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220506-U

NO. 4-22-0506

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHN EDWARD COVINGTON, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| HEARTLAND COMMUNITY COLLEGE, | ) | No. 22AR90 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Carla E. Barnes, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Cavanagh and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where plaintiff's complaint against the same defendant was dismissed on the merits in an earlier action, it was not error for the circuit court to dismiss an identical complaint in this case.

¶ 2    In May 2022, plaintiff John Edward Covington filed a breach of contract claim against defendant Heartland Community College seeking a partial credit of his financial aid after being expelled. The circuit court *sua sponte* and without a hearing dismissed the complaint, finding that it was the same complaint previously filed and dismissed in another case.

¶ 3    Plaintiff appeals, arguing that it was improper for the circuit court to dismiss his complaint *sua sponte* and without notice and a hearing.

¶ 4    We affirm.

¶ 5                               I. BACKGROUND

¶ 6           Plaintiff filed a complaint on March 29, 2022 (case No. 22-AR-60) (first complaint alleging that defendant improperly required him to repay his financial aid following his expulsion from the college during the spring semester of 2014). According to the complaint, classes began on January 13, 2014, and defendant was expelled from the college on March 4 of that year. He asserted that, "[b]y law, only the 'unearned' portion of Title IV is to be returned to the appropriate financial sources once a student withdraws or is dismissed from school." Plaintiff contended that his financial aid "was supposed to be prorated based on the amount of time I had already spent in class," and that "[i]t wasn't." His complaint asserted that defendant "made me pay back 100% of my financial aid that I had received that semester which is 100% illegal." He then alleged that "[c]ontractual obligations were obviously violated on [defendant's] end and I feel I'm entitled to compensation for damages." His complaint sought $50,000.

¶ 7           In late April, the circuit court held an initial hearing in the first case, with plaintiff appearing *pro se* and defendant appearing by counsel. According to the docket sheet, plaintiff informed the court that "he [had] not been refunded fees, federal funding, upon dismissal from Heartland Community College." At the conclusion of the hearing, the court dismissed the complaint for failure to state a claim. Neither an amended complaint nor a notice of appeal was filed in the first case following the April 25 dismissal order.

¶ 8           On May 12, plaintiff filed a second complaint (case No. 22-AR-90) (second complaint), which involved the same parties and was identical in all respects to the first complaint filed in March. Apparently in the process of reviewing plaintiff's application for a fee waiver, the court (the same judge who dismissed the first complaint) made the following ruling: "Court dismisses this case as same filing in 20 AR 60 which was dismissed on 4/25/22 for failure to state

a claim." The docket suggests that on May 16, 2022, the case was set for a motion to be heard on May 26 (though no motion was filed). When the case was called on May 26, the docket merely reflects that plaintiff appeared and "Motion Held." No further action was taken. Whatever plaintiff's (apparently oral) motion was about, it appears to have been denied.

¶ 9 This appeal followed.

¶ 10 II. ANALYSIS

¶ 11 The essence of plaintiff's argument is that his complaint should not have been dismissed by the judge without notice and a hearing. Plaintiff has not specifically articulated a due process argument and has not cited any authority in support of such an argument, but we recognize that claims that a litigant failed to receive notice and an opportunity to be heard necessarily implicate due process concerns. As will be seen, however, any due process issues are addressed in the context of case law concerning *sua sponte* dismissals. The two issues before us, then, are whether the circuit court could *sua sponte* dismiss the second complaint without providing plaintiff an opportunity to be heard and, if so, whether the second complaint was properly dismissed. We review both issues *de novo*. *Bilski v. Walker*, 392 Ill. App. 3d 153, 157 (2009); *People v. Vincent*, 226 Ill. 2d 1, 13 (2007).

¶ 12 A. The Circuit Court's Authority to Act *Sua Sponte*

¶ 13 " 'The core of due process is the right to notice and a meaningful opportunity to be heard ***.' " *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 14 (quoting *LaChance v. Erickson,* 522 U.S. 262, 266 (1998)). However, a court may, on its own motion, dispose of a matter when it is clear on its face that the requesting party is not entitled to relief as a matter of law. *Vincent*, 226 Ill. 2d at 12; see also *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 1028 (1984) (finding the failure of a complaint to state a cause of action is a fundamental defect, and it

was not improper for the circuit court to dismiss it on its own motion). A circuit court also possess considerable discretion to control, *sua sponte*, its own docket, and to protect itself against frivolous claims. See *Vincent*, 226 Ill. 2d at 12; see also *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 66 (1995) (dismissal for failure to prosecute); *Nicholson v. Chicago Bar Ass'n*, 233 Ill. App. 3d 1040, 1045 (1992) (A circuit court's authority to dismiss is considered an " 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own dockets so as to achieve the orderly and expeditious disposition of cases.").

¶ 14    In *Bilski*, an inmate brought a *pro se* action against various State defendants alleging violations of his state and federal due process rights. *Bilski*, 392 Ill. App. 3d at 153. The circuit court *sua sponte* dismissed the complaint for failure to state a cause of action and for lack of jurisdiction. *Id*. On appeal, this court affirmed, finding that the circuit court had acted properly and within its authority in addressing the matter *sua sponte*. *Id*. at 156. Applying *Vincent* (which dealt with a section 2-1401 petition), this court observed: "What the supreme court made clear in *Vincent* is that a trial court has authority under the principles of civil practice and procedure to *sua sponte* dismiss the type of claim presented in this case—namely, a frivolous lawsuit." *Id*. According to the court, *Vincent* was not limited to section 2-1401 petitions and therefore, "[w]e conclude the *Vincent* precepts apply here, even though this claim was ostensibly brought under section 1983." *Id.*

¶ 15    Similarly, in *Mason v. Snyder*, 332 Ill. App. 3d 834, 835-36 (2002), a prison inmate filed *pro se* a *mandamus* action against various prison officials; it was dismissed by the circuit court *sua sponte*. On appeal, the question became whether the court had the authority to *sua sponte* dismiss the *mandamus* petition as frivolous. This court concluded that the circuit court acted

properly and that it possessed an inherent authority to dismiss any claim that failed to state a cause of action, even if the dismissal was *sua sponte*. *Id.* at 842.

¶ 16        Illinois courts have routinely upheld a circuit court's *sua sponte* dismissal of complaints in a variety of settings, including *mandamus* (*Mason*), section 2-1401 petitions (*Vincent*), strict liability complaints (*Rhodes*), and civil rights complaints (*Bilski*). The supreme court has further upheld *sua sponte* dismissals of petitions for writs of *habeas corpus*. *Beacham v. Walker*, 231 Ill. 2d 51, 58-59 (2008). While we do not suggest that *sua sponte* dismissals should be the rule, the foregoing cases reflect that courts have the authority to enter such dismissals when the case is patently without merit or frivolous. As the supreme court observed in *Vincent*, a circuit court is not necessarily required to provide notice or an opportunity to be heard before it acts in such circumstances. *Vincent*, 266 Ill. 2d at 12; see also *Rhodes*, 126 Ill. App. 3d at 1028 (upholding *sua sponte* dismissal of a count from the plaintiff's complaint even though the defendant had not yet filed an appearance or a motion to dismiss).

¶ 17        We find no reason why these general principles should not apply to the instant claim, which is *identical* to a claim that was dismissed by the same judge at a hearing conducted approximately two weeks earlier. We note the following from *Vincent,* which explains that *sua sponte* dismissals do not necessarily deprive a litigant of access to the courts:

> "It is unclear to us in what way Vincent's opportunity to be heard has been compromised. He has not been denied access to the courts, as his petition was filed in the circuit court and considered by a judge. The procedure employed by the trial judge here did not prevent Vincent from bringing a meritorious claim because \*\*\* his claim has no merit. In addition, adequate procedural safeguards exist to prevent erroneous *sua sponte* terminations. A section 2-1401 petitioner whose petition has

been disposed of by the court *sua sponte* could file a motion for rehearing under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2002)). In addition, a litigant whose cause of action has been terminated by the court *sua sponte* may bring an appeal, which invites *de novo* review of the legal sufficiency of the complaint. [Citation.] Thus, the availability of corrective remedies, such as a motion to reconsider, renders the lack of notice prior to the ruling less of a concern." *Vincent*, 166 Ill. 2d at 12-13.

¶ 18       We find *Vincent*'s discussion of due process concerns to be persuasive here. In this case, plaintiff had several options available to him for a hearing. He could have filed a motion to reconsider the court's May 12 order (which he may have attempted through some sort of oral post-trial motion, though it was apparently denied). He is also effectively receiving judicial review of the correctness of the trial court's *sua sponte* dismissal in this appeal. Most importantly, plaintiff already had a hearing and an opportunity to be heard on his identical first complaint, which was dismissed for failure to state a claim. The issue here is not that plaintiff wasn't given notice and an opportunity to be heard, but that he was not given them *twice*.

¶ 19       For the reasons explained above, we conclude that the circuit court possessed the authority to enter a *sua sponte* order dismissing plaintiff's complaint—even though plaintiff had not appeared, and defendant had not entered its appearance or filed a motion to dismiss—and that there was no associated deprivation of any due process rights because of the *sua sponte* action.

¶ 20                    B. The Circuit Court's May 12 Dismissal Order

¶ 21       We now turn to whether the court's *sua sponte* dismissal of the second complaint was proper on the merits. At the outset, we note we are not examining the merits of the April order in case No. 22-AR-60, finding the initial complaint failed to state a cause of action; instead, we

focus solely on the circuit court's May 12 order in the instant case dismissing plaintiff's complaint *sua sponte* due to the dismissal of the complaint previously filed in case No. 22-AR-60. In other words, we examine whether the court properly dismissed the second complaint because it was identical to the first. There are two possible rationales for the trial court's decision to dismiss the complaint at issue: (1) the doctrine of *res judicata* and (2) the recent (but not yet final) dismissal of the first action. "However, this court reviews the trial court's judgment, not its rationale, and may affirm for any reason the record supports." *Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064, ¶ 31.

¶ 22                             1. *Applicability of* Res Judicata

¶ 23          Defendant contends that the second complaint was properly dismissed based on principles of *res judicata*. "Whether an action is barred by *res judicata* is a question of law that this court reviews *de novo*." *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 44 (citing *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43). The party invoking the doctrine bears the burden of showing its applicability. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45.

¶ 24          *Res judicata* is a judicially created doctrine that arises from "the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 49. The doctrine requires "a final judgment on the merits rendered by a court of competent jurisdiction *** between the same parties or their privies on the same cause of action." *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890 (2009). Given the identical complaints between identical parties pleading an identical cause of action, we clearly have three of the requisite elements of *res judicata*.

¶ 25 Our concern, however, lies with the doctrine's fourth element—the requirement of a final order. To determine whether the doctrine of *res judicata* applies in this case, we must determine whether the dismissal of plaintiff's initial complaint was a final judgment on the merits. Illinois Supreme Court Rule 273 (eff. Jan. 1, 1967) provides:

> "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits."

¶ 26 Under Illinois law, therefore, the dismissal of a complaint for failure to state a claim, absent some language to the contrary contained in the order, is "an adjudication on the merits." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 303 (1998) (citing *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 650 (1993), and *McGann v. Illinois Hospital Ass'n*, 172 Ill. App. 3d 560, 568-69 (1988)).

¶ 27 Here, the April 25 order states only that the first complaint was "dismisse[d] *** for failure to state [a] claim." There is no language limiting the order's impact; though plaintiff was present at the April 25 hearing, there is no suggestion that he requested leave to amend his pleading, and regardless, no such leave was granted. Thus, the order appears to be a final order.

¶ 28 Even though the April order was final, the time for filing an appeal from the April ruling had not yet expired when the circuit court ruled on the second complaint on May 12, 2022. See Ill. S. Ct. R. 303(a)(1) (eff., July 1, 2017) (A notice of appeal must be filed within 30 days after the entry of the final judgment, or within 30 days after the entry of the order disposing of the last pending timely filed postjudgment motion.). Thus, when the circuit court made its May 12 ruling, the court's April 25 order dismissing the first complaint had not yet become "a final

- 8 -

judgment on the merits rendered by a court of competent jurisdiction." *River Park, Inc.*, 184 Ill. 2d at 302. "A judgment is final for *res judicata* purposes if it determines the litigation on the merits such that, if affirmed, the only thing remaining is the execution of the judgment." *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 26 (citing *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 441 (1981)). "If a judgment is still subject to the appeal process, it cannot be given *res judicata* effect." *Id.* (citing *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 860 (2000)).

¶ 29        Because the April 25 dismissal order in the first case was still subject to appeal as of May 12, 2022, *res judicata* could not, as a matter of law, attach—at least not yet. It is an interesting theoretical exercise to consider whether the circuit court's dismissal might have ripened into a proper invocation of *res judicata* once the appropriate amount of time had passed, but there is no need for such analysis. If we assume that the April 25 dismissal order was not yet final for purposes of *res judicata*, then it means that the first action was still pending at the time the second action was dismissed; as discussed below, this provides a separate and independent basis for dismissal of the second action.

¶ 30                              2. *Same or Similar Action Pending*

¶ 31        It is well settled that an action may be dismissed if there is already "another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2020). The purpose of such a dismissal is "to avoid duplicative litigation." *In re Estate of Hoch*, 382 Ill. App. 3d 866, 869 (2008). "The 'same parties' requirement of section 2-619(a)(3) is satisfied where the litigants' interests are sufficiently similar, even though the litigants differ in name or number." (Internal quotation marks omitted.) *Id.*. The "same causes" requirement is satisfied where "the relief requested is based on substantially the same set of facts." (Internal quotation marks omitted.)

- 9 -

*Id*. (quoting *Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, 356 Ill. App. 3d 749, 753 (2005)). Thus, "the crucial inquiry is whether both [actions] arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions." (Internal quotation marks omitted.) *Id*. (quoting *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 337 (2005)).

¶ 32 We find support for our conclusion here in *Estate of Hoch*, where this court upheld the circuit court's *sua sponte* dismissal of the plaintiff's Illinois claim based on section 2-619(a)(3) due to the existence of a similar claim pending between the same parties in Louisiana. There, both legal proceedings arose out of the same individual's death, and the two actions concerned the distribution of decedent's estate, whether intestate (Louisiana) or by will (Illinois). *Id*. at 869. Both causes centered "on the validity of [decedent's] will and how his estate will be distributed once the validity of the will is determined," and therefore, "involve[d] the same parties for the same cause." *Id*. at 870. Here, the two complaints involve the same parties and the same cause of action, and the complaints are identically worded.

¶ 33 We conclude that the circuit court's May 12 dismissal order was not an abuse of discretion because the second complaint was identical in all respects to the initial complaint and further involved the "same parties." The second complaint, therefore, constituted an action involving the "same cause" as the prior complaint, and that action was still pending when the circuit court made the ruling at issue here. Section 2-619(a)(3) allows a circuit court to properly dismiss the second complaint in such a scenario, which is precisely what the circuit court did below. Accordingly, we find no error and affirm.

¶ 34 III. CONCLUSION

¶ 35 For the reasons stated, we affirm the circuit court's judgment.

¶ 36          Affirmed.